**UNITED STATES DISTRICT COURT**

**WESTERN DISTRICT OF LOUISIANA**

**LAFAYETTE DIVISION**

| | | |
|---|---|---|
| **ALEXANDER I. IJEMBA** | : | **DOCKET NO. 2:07-cv-1091**<br>**Section P** |
| **VS.** | : | **JUDGE DOHERTY** |
| **ATTORNEY GENERAL, ET AL.** | : | **MAGISTRATE JUDGE HILL** |

**REPORT AND RECOMMENDATION**

Currently before the court is a petition for writ of *habeas corpus* filed by *pro se* petitioner, Alexander I. Ijemba, pursuant to 28 U.S.C. § 2241. This matter has been referred to the undersigned magistrate judge for review, report, and recommendation in accordance with 28 U.S.C. § 636(b)(1)(B).

Petitioner alleges that his detention is unconstitutional because he has been subjected to mandatory detention under the current INA § 236(c) based on a criminal conviction which pre-dates the 1996 enactment of the Illegal Immigration Reform and Immigrant Responsibility Act (IIRIRA). Thus, petitioner contends that the application of this provision has an impermissible retroactive effect on him.

Review of this court's records reveals that petitioner filed a previous petition for writ of *habeas corpus* in this court. *Ijemba v. Gonzalez*, 2:07-cv-0098. In that petition, Ijemba provides factual details of his criminal and immigration proceedings. Petitioner was

convicted of a federal criminal offense in 1991, for which he served 16 years imprisonment.[1] While petitioner was in Arizona serving his criminal sentence, on November 30, 1993, the INS served petitioner with an Order to Show Cause. However, the INS failed to proceed against petitioner at that time. Upon completion of petitioner's criminal sentence, on August 20, 2005, petitioner was transferred to the custody of the Department of Homeland Security (DHS) in Oakdale, Louisiana. The DHS served petitioner with a Notice to Appear on January 9, 2006, alleging the same conduct as in the previous Order to Show Cause. Immigration proceedings were initiated in Oakdale, Louisiana on January 27, 2006. Thereafter, on October 27, 2006, petitioner was ordered removed from the United States by an immigration judge in Oakdale, Louisiana.

The record does not disclose whether petitioner appealed the immigration judge's deportation order to the Board of Immigration Appeals or whether he sought review of that Order in the United States Fifth Circuit Court of Appeal. Hence, it is unclear whether petitioner is under a final order of deportation triggering application of the removal period set forth in INA § 241. For purposes of this Report and Recommendation, the undersigned assumes that is not the case.

---

[1] The published jurisprudence reveals that petitioner was convicted by a California federal court on various counts relating to a conspiracy to import and distribute heroin. *See United States v. Ijemba*, 988 F.2d 124 (9th Cir. 1993) (affirming petitioner's conviction and sentence on direct appeal); *Ijemba v. United States*, 53 F.3d 388 (9th Cir. 1995) (affirming denial of petitioner's § 2255 motion); *United States v. Ijemba*, 165 F.3d 919 (9th Cir. 1998) (affirming the denial of petitioner's § 2241 motion because the remedy under § 2255 was not inadequate or ineffective); *United States v. Ijemba*, 65 Fed.Appx. 405 (9th Cir. 2003) (affirming denial of petitioner's motion for a new trial, and finding petitioner not entitled to relief under FRCrP 33 or FRCP 60(b)).

## LAW AND ANALYSIS

**Applicable Detention Provision**

Essentially, petitioner argues that the mandatory detention provision of INA § 236(c) [8 U.S.C. § 1226(c)] should not be retroactively applied to him because he was convicted of conduct subjecting him to removal in 1991, before the effective date of § 236(c).

The Supreme Court has set forth the basic framework for addressing whether a statute has retroactive application:

> When a case implicates a federal statute enacted after the events in suit, the court's first task is to determine whether Congress has expressly prescribed the statute's proper reach. If Congress has done so, of course, there is no need to resort to judicial default rules. When, however, the statute contains no such express command, the court must determine whether the new statute would have retroactive effect, i.e., whether it would impair rights a party possessed when he acted, increase a party's liability for past conduct, or impose new duties with respect to transactions already completed. If the statute would operate retroactively, our traditional presumption teaches that it does not govern absent clear congressional intent favoring such a result.

*Landgraf v. USI Film Prods.*, 511 U.S. 244, 280 (1994).

Here, this court need not proceed past the first step of the analysis because Congress has expressly provided that 8 U.S.C. § 1226(c) is to be applied prospectively to aliens who were released from criminal custody after the statute took effect. Congress has explicitly set forth the effective date of the new detention provisions of the IIRIRA.[2] *See* Pub.L. 104-208, Div. C, Title III, § 303(b), Sept. 30, 1996, 110 Stat. 3009-586. In that provision, Congress provided that implementation of the mandatory detention provision contained in 8 U.S.C.

[2] IIRIRA , enacted on September 30, 1996, established two sets of rules, the non-codified transitional rules and the permanent rules.

§ 1226(c) could be delayed for up to two years upon the request of the Attorney General. *See* IIRIRA § 303(b)(2).[3] Congress then provided that "[a]fter the end of such 1-year or 2-year

---

[3]Section 242 of the INA was amended by § 440(c) of AEDPA in April of 1996. Under the amendment, the provisions allowing release of certain criminal aliens was deleted and accordingly, those aliens could not be released from immigration detention. Thus, the Attorney General's discretion existing under prior law to release non-dangerous, non-flight risk aliens was revoked. In response, because the INS lacked sufficient detention space to carry out the mandatory detention provisions contained in the AEDPA, Congress included the so called "Transition Period Custody Rules" in section 303(b)(3) of IIRIRA. Section 303(b)(2) permitted the Attorney General to invoke the Transition Rules, which replaced the amendments made by § 440 (c) of the AEDPA for a one or two year period. In contrast to the mandate established by AEDPA, the transition rules restored discretion to the Attorney General to release many criminal aliens who were lawfully admitted to this country or who could not be removed because the designated country would not accept them provided they could meet statutory conditions substantially similar to the pre-AEDPA tests regarding dangerousness and flight risk. The transition rules were thus designed to give the Attorney General a one or two year grace period during which mandatory detention would not be the general rule. *See In re Noble*, 1997 WL 61453 (BIA 1997); *In Re Valdez,* 1997 WL 80989 (B.I.A. 1997).

Section 303(b)(2) of IIRIRA provides:

**(2) Notification regarding custody.--**If the Attorney General, not later than 10 days after the date of the enactment of this Act, notifies in writing the Committees on the Judiciary of the House of Representatives and the Senate that there is insufficient detention space and Immigration and Naturalization personnel available to carry out section 236(c) of the Immi8grationa and Nationality Act, as amended by subsection (a), or the amendments made by sections 440(c) of Public Law 104-132, the provisions in paragraph (3) shall be in effect for a 1-year period beginning on the date of such notification, instead of such section or such amendments. The Attorney General may extend such 1-year period for an additional year if the Attorney General provides the same notice not later than 10 days before the end of the first 1-year period. After the end of such 1-year or 2-year periods, the provisions of such section 236(c) shall apply to individuals released after such periods.

The Transition Period Custody Rules state as follows:

**(3) Transition Period Custody Rules.--**

**(A) In General.--**During the period in which this paragraph is in effect pursuant to paragraph (2), the Attorney General shall take into custody any alien who--

(I) has been convicted of an aggravated felony (as defined under section 101(a)(43) of the Immigration and Nationality Act, as amended by section 321 of this division,

(ii) is inadmissable by reason of having committed any offense covered in section 212(a)(2) [includes conviction for crime of moral turpitude] of this Act,

(iii) is deportable by reason of having committed any offense covered in section 241(a)(2)(A)(ii) [multiple criminal convictions], (A)(iii) [aggravated felony], (B) [controlled substance], (c) [certain firearm offenses], or (D) [miscellaneous crimes] of such Act, or

(iv) is inadmissable under section 212(a)(3)(B) of such Act,

when such alien is released, without regard to whether the alien is released on parole, supervised release, or probation, and without regard to whether the alien may be arrested or imprisoned again for the same offense.

**(B) Release.--**The Attorney General may release the alien only if the alien is an alien described in subparagraph (A)(ii) or (A)(iii) and--

(I) the alien was lawfully admitted to the United States and satisfies the Attorney General that the alien will not pose a danger to the safety of other persons or of any property and is likely to appear for any scheduled proceeding, or

(ii) the alien was not lawfully admitted to the United States, cannot be removed because the designated country of removal will not accept the alien, and satisfies the Attorney General that the alien will not pose a danger to the safety of other persons or of property and is likely to appear for any scheduled

periods, the provisions of [8 U.S.C. § 1226(c)] *shall apply to individuals released after such periods*." *Id.* (emphasis added). Thus, IIRIRA § 303(b)(2) clearly sets forth the express command of Congress that the permanent mandatory detention provisions are to be applied to aliens who were released from criminal custody *after* the transitional one or two year period expired. *Velasquez v. Reno*, 37 F.Supp.2d 663, 670-71 (D.N.J.1999).

The Transition Rules became effective on October 9, 1996 for one year when the Attorney General via the Commissioner of the INS notified the appropriate congressional committees of their invocation. This one year period was extended for another year, until October 9, 1998, by the Attorney General on September 30, 1997. The Attorney General did not request an additional extension, and accordingly, the rules expired on October 9, 1998 at which time the permanent detention rules went into effect pursuant to section 303(b)(2).

In the instant case, it is clear that petitioner was released from criminal custody after the two year transitional period had expired. Upon completion of his criminal sentence, on August 20, 2005, petitioner was transferred from the custody of the Bureau of Prisons to the custody of the Department of Homeland Security in Oakdale, Louisiana for immigration proceedings. That occurred almost seven years after the transition period custody rules expired and almost seven years after the permanent provisions had taken effect. Thus, under the express terms of the IIRIRA, § 236(c) applies to petitioner, petitioner's challenge to the mandatory detention provision of § 236(c) is therefore without merit as the statute has not been retroactively applied to him.

---

proceedings.

Although the undersigned has not found any Fifth Circuit authority on point, other district courts as well as the Board of Immigration Appeals have similarly held that 8 U.S.C. § 1226(c) [INA § 236(c)] applies to aliens who were released from physical criminal custody and immediately taken into the physical custody of the INS *after* the statute's effective date. *See Velasquez*, 37 F.Supp.2d at 671; *Saucedo-Tellez v. Perryman*, 55 F.Supp.2d 882, 885 (N.D.Ill. 1999); *In re:Albert Samuilvich Feldman,* 2007 WL 1794184 (BIA 6-4-07) *citing In re: Neville George West*, 22 I&N Dec. 1405, 2000 WL 1612317 (BIA 2000) and *In re: Adewunmi Adeniji*, 22 I&N Dec. 11002, 1999 WL 1100900 (BIA 1999); *In Re: Victor Leonardo Rojas*, 23 I&N Dec. 117, 2001 WL 537957 (BIA 2001); *Alwaday v. Beebe,* 43 F.Supp.2d 1130, 1133 (D.Or. 1999) ("Congress provided that the provisions of such section 236(c) shall apply to individuals released after the TPCRs expire. IIRIRA § 303(b)(2). The TPCRs expired October 9, 1998, so § 236(c) applies only to aliens released from incarceration after that date."); *Cox v. Monica*, 2007 WL 1804335, *4(M.D.Pa. 2007); *Vang v. Ashcroft,* 149 F.Supp.2d 1027 (N.D.Ill. 2001) (concluding that § 236(c) did not apply to an alien released from criminal custody in May 1998 five months before § 1226(c) took effect). Moreover, the United States Supreme Court has upheld the constitutionality of the mandatory detention provision set forth in § 236(c). *Demore v. Kim*, 538 U.S. 510, 123 S.Ct. 1708, 155 L.Ed.2d 724 (2003).

In light of the above;

**RECOMMENDED** that this petition be **DENIED AND DISMISSED WITH PREJUDICE**.

Under the provisions of 28 U.S.C. § 636(b)(1)(C), the parties have ten (10) business days from receipt of this Report and Recommendation to file any objections with the Clerk of Court. Timely objections will be considered by the district judge prior to a final ruling.

**FAILURE TO FILE WRITTEN OBJECTIONS TO THE PROPOSED FINDINGS AND RECOMMENDATIONS CONTAINED IN THIS REPORT WITHIN TEN (10) BUSINESS DAYS FROM THE DATE OF ITS SERVICE SHALL BAR AN AGGRIEVED PARTY FROM ATTACKING ON APPEAL, EXCEPT UPON GROUNDS OF PLAIN ERROR, THE UNOBJECTED-TO PROPOSED FACTUAL FINDINGS AND LEGAL CONCLUSIONS ACCEPTED BY THE DISTRICT COURT.**

THUS DONE AND SIGNED in Chambers at Lafayette, Louisiana, September 4, 2007.

C. Michael Hill

C. MICHAEL HILL
UNITED STATES MAGISTRATE JUDGE